942 So.2d 12 (2006)
Alandrey Peral BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 1D05-4718.
District Court of Appeal of Florida, First District.
October 18, 2006.
Rehearing Denied November 20, 2006.
*13 Nancy A. Daniels, Public Defender, and Glenna Joyce Reeves, Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General, and Giselle Lylen Rivera, Assistant Attorney General, Tallahassee, for Appellee.
DAVIS, J.
This is an appeal from Appellant's convictions for battery on a law enforcement officer, resisting an officer with violence, and possession of cocaine. Appellant raised several issues on appeal including whether the trial court erred by denying Appellant's motions for a continuance. Because we find that the trial court did not abuse its discretion by denying the motions and because we find no error as to the other issues raised by Appellant, we affirm.
Appellant was arrested on March 15, 2005, and a public defender was appointed to represent him the following day. On June 2, 2005, the trial court conferred with the prosecutor and the public defender and scheduled the trial for July 11, 2005. On June 28, 2005, the court allowed Appellant to substitute private counsel, Mr. Sessions, for the public defender and private counsel requested a continuance at that time. The trial court indicated that the court's policy was "that when people retain private counsel after the case has been set for trial, I usually don't continue the trial. So when you come aboard at the last minute, Mr. Sessions, you come aboard at the peril of having to go to trial rather quickly." The trial court denied the motion for continuance.
On July 7, 2005, Appellant filed a second motion for continuance in order to review the public defender's file, attempt to locate a prospective witness, and pursue any additional information. The prosecutor opposed the motion because the depositions were completed. The court found that defense counsel's problems were attributable to Appellant's retention of private counsel on the eve of trial and denied the motion.
*14 On July 11, 2005, Appellant filed a third motion for continuance in order to review the public defender's file, attempt to locate a new prospective witness, and investigate possible bias of state witnesses. Counsel also informed the court that he recently learned about a prospective witness that morning and he had not yet had a chance to contact that person. The prosecutor opposed the motion and argued that Appellant's motion showed that counsel had already investigated the case. The trial court again denied the motion because Appellant waited until ten days prior to the trial to hire private counsel. Prior to opening statements, Appellant's counsel asked for a continuance because he was unable to reach two witnesses. The trial court denied the motion because Appellant had been represented by counsel since the day after his arrest.
The denial of a motion for a continuance is reviewed under an abuse of discretion standard. Overton v. State, 801 So.2d 877, 896 (Fla.2001). The trial court's denial of counsel's motion "should be sustained unless no reasonable person would take the view adopted by the trial court." Id. When reviewing a trial court's denial of a motion for continuance based on lack of preparation time, this court must consider the following factors:
1) the time available for preparation, 2) the likelihood of prejudice from the denial, 3) the defendant's role in shortening preparation time, 4) the complexity of the case, 5) the availability of discovery, 6) the adequacy of counsel actually provided and 7) the skill and experience of chosen counsel and his pre-retention experience with either the defendant or the alleged crime.
McKay v. State, 504 So.2d 1280, 1282 (Fla. 1st DCA 1986).
Neither party specifically argued McKay nor any other cases during the motion hearings; however, the factors listed in McKay were essentially argued before the court. As shown by the trial court's statement concerning its policy, the court considered the role Appellant played in shortening counsel's time for preparation. Appellant waited until a few weeks prior to his trial date to obtain substitute counsel. At one point, Appellant explained that he retained private counsel because he had never been in communication with his public defender; however, Appellant's own statement indicated that he was aware of this alleged lack of communication prior to the case being set for trial. Appellant also waited until one day prior to the trial to inform counsel about additional prospective witnesses.
Another factor discussed in McKay is the availability of discovery. From the record, it appears that the majority of the discovery was completed prior to the substitution of counsel and that counsel was able to review this information prior to the trial. While counsel may not have had his desired amount of time to prepare for the case, counsel managed to conduct extensive investigation on his own by visiting the scene of the crime and interviewing potential witnesses. In his second motion for a continuance, counsel actually demonstrates his own readiness for trial by stating that he had "investigated the site of the arrest in this case on two occasions, located and produced for deposition an eyewitness to the arrest in this case, interviewed an additional prospective witness for the defense, deposed one of the police officers involved in the arrest in this case, analyzed the testimony of said officer and other information received from the State, commenced drafting both a Motion to Suppress and Motion to Dismiss, and met with the Assistant State attorney in this case on two occasions to discuss possible settlement of this matter." Counsel also managed *15 to prepare and argue a motion for suppression. Considering the amount of counsel's preparation, it does not appear that Appellant was prejudiced by the denial of the motions for continuance.
This case was also very straightforward. Two police officers witnessed Appellant conducting what appeared to be a drug transaction in the middle of the street. The officers approached Appellant to ask why he was standing in the middle of the street. After determining that Appellant had no outstanding warrants, Appellant was instructed that he was free to go. One of the officers asked Appellant for, and Appellant gave, his consent to search his person. When the officer found a bag of cocaine, Appellant started trying to pull away from the officer and struck both officers during a struggle that was witnessed by three citizens, whose testimony corroborated the police officers' testimony.
While it is true that the trial court made reference to a policy to deny motions for a continuance when they were made after a late substitution of counsel, this does not mean that the trial court did not properly exercise its discretion. The trial court allowed Appellant to argue not one but four motions for continuances. The trial court also heard arguments on the issues listed in McKay. Based on the record before this court, it appears that the trial court did exercise its discretion and properly denied the motions. We therefore affirm Appellant's convictions and sentences.
AFFIRMED.
KAHN, J., concurs.
BROWNING, C.J., dissents with written opinion.
BROWNING, C.J., dissents.
I respectfully dissent from the majority opinion because the trial court reversibly erred by applying a personal policy instead of binding precedent to Appellant's four motions for continuance.
On March 15, 2005, Appellant was arrested and was charged with a battery on a law enforcement officer, resisting an officer with violence, and possession of cocaine. A public defender was appointed to represent Appellant on March 16, 2005. When he was represented by the public defender, a July 11, 2005, trial date was set at a scheduling conference.
On June 28, 2005, the trial court authorized a substitution of private counsel for the public defender. That same day, private counsel moved for a continuance to enable him to conduct discovery and prepare for trial. The state did not oppose the motion. However, the trial court denied the motion and stated "that when people retain private counsel after the case has been set for trial, I usually don't continue the trial. So when you came on board at the last minute, Mr. Sessions, you come aboard at the peril of having to go to trial rather quickly." Also, the trial court opined that counsel's rescheduling conflict should have been considered before he agreed to represent Appellant. The trial court did not mention the seven factors this court has enunciated as controlling decisions granting or denying continuances by trial courts. See McKay v. State, 504 So.2d 1280 (Fla. 1st DCA 1986).
On July 7, 2005, Appellant again moved for a continuance. The trial court denied the motion and opined that defense counsel's problems were attributable to Appellant's retaining private counsel on the eve of trial. Once again, the trial court failed to mention the seven McKay factors and opined:
And again, as I said before, it's my policy that people that wait until the last minute to retain private counsel don't get any continuances.
*16 Again, on July 11, 2005, Appellant filed a third motion for continuance because private counsel had learned of two witnesses, whom he had been unable to contact; the state opposed that continuance. The trial court denied the motion on the same basis: its policy relating to continuances when private counsel is hired after a trial date has been previously scheduled. The trial court again failed to mention and apply the McKay factors.
Finally, at trial, prior to opening statements, Appellant moved for a fourth continuance because he was unable to reach two witnesses. The trial judge followed his personal policy rather than the McKay factors and denied the motion because Appellant had been represented by counsel since March 15, 2005, and refused to consider that private counsel was not retained until June 28, 2005.
In my judgment, the trial court reversibly erred by entering the orders denying Appellant's four motions for continuance based upon a personal policy rather than upon controlling precedent.
In McKay this court established seven factors that a trial court should consider when ruling on a motion for continuance. These factors do not include the personal policy of a trial court, but all of them relate to ensuring that a defendant be afforded a fair trial. Because these factors were not applied here, this court is without a discretionary act to review.
The state in its answer brief does not attempt to justify the basis for the trial court's decision on Appellant's four motions for a continuance; it argues in avoidance that the Appellant cannot show prejudice. However, the paramount consideration is the significance of the trial court's failure to apply the McKay factors, leaving this court with no act to review and thereby placed in a position making it difficult, if not impossible, to make an informed decision based on prejudice. There is a dearth of authority on this specific issue in Florida. However, Appellant cites Buschardt v. Jones, 998 S.W.2d 791 (Mo.App.1999), which is instructive. That court, when dealing with the same issue couched in a domestic case, stated:
A judge's decision on visitation is to be an exercise of the judge's discretion after properly weighing all the relevant facts, not a decision based on a predetermined policy. By having a policy that a certain provision is to be entered in every case, the judge abused his discretion by failing to exercise it.
Id. at 800. It seems to me that this principle is axiomatic and should be adopted and applied to this case.
Also, I am unpersuaded by the state's argument that the error is not harmful beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The reason for a continuance is to give a defendant ample time to prepare his or her case. If such time is not afforded, a defendant's preparation is curtailed and witnesses are unavailable, making it difficult to show prejudice. This could have been avoided by the trial court's consideration of the seven factors specified in McKay. Since this was not done, I cannot say beyond a reasonable doubt under DiGuilio that Appellant was not prejudiced by the trial court's personal policy. Moreover, under DiGuilio this is a defense that the state, not Appellant, must prove beyond a reasonable doubt, after error is established.
While not directly argued by the Appellant, there is a salient factor that supports this dissent's rationale. Recently, the U.S. Supreme Court reaffirmed the revered right to private counsel and reversed, on the basis of structural error, a trial court that disallowed a choice of private counsel. *17 United States v. Gonzalez-Lopez, ___ U.S. ___, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). While that case is not factually controlling here, it vividly points out the inappropriateness of allowing a personal policy to adversely affect a defendant's right to private counsel, as here.
Finally, the majority opinion deems the trial court's verbal basis for its rulings to be less persuasive than non-verbal facts and circumstances gleaned from the record that the trial court deemed insignificant by failing to address or consider them. Apparently, the majority opinion fails to grasp that we are not dealing with an exercise of judicial discretion here, but with a total abdication of that approach for one of a trial court's personal policy. I know that fact, without doubt, because that is what the trial court said on, not one, not two, not three, but four separate occasions four separate days. On the face of these emphatic, clear, and unequivocal pronouncements, for the majority opinion to conclude that the trial court "did exercise its discretion and properly denied the motions" perplexes me. I believe that proper appellate review dictates that we give words their ordinary meaning and recognize that words do mean something. What the trial court's words mean to me is that it prejudged Appellant's four motions without regard to how those factors deemed significant in the majority opinion weighed. To follow the majority opinion's recasting of the trial court's ruling, I believe, condones future usage of personal policies by trial courts if such policies can be supported by the presence in the record of unconsidered circumstances that might support a lawful ruling had judicial discretion been exercised. Because this leads to speculation and inconsistent results by a downplaying of unequivocal verbal expressions, I am unconvinced by the majority opinion.
I am not unaware of the time constraints of the hard-working trial courts of this state. Their dockets are full to the extent of being almost unmanageable, and there is great pressure to disallow requests that hinder quick resolution of cases. Continuances often complicate the problem. However, this dilemma cannot eclipse the goal of a fair trial. When considering this same issue, our sister court, the Fifth District Court of Appeal, properly prioritized the factors involved in the case of Trocola v. State, 867 So.2d 1229 (Fla. 5th DCA 2004), and stated:
Trial courts are under constant pressure to move cases through the criminal justice system. All judges are fully aware that unless cases are efficiently processed, the burden of backlog begins to choke, and unwanted delays multiply exponentially[.] One of our primary functions, however, is to make sure that trials are fair. We cannot lose sight of that laudable goal in the name of expediency.
Id. at 1232.
Here the trial court violated that delicate balance by following a personal policy rather than the law, and I would reverse and remand for a new trial.